**ASSOCIATED THIRD CLASS MAIL USERS, Plaintiff,**

and

**National Easter Seal Society for Crippled Children and Adults, Intervenor,**

v.

**UNITED STATES POSTAL SERVICE et al., Defendants.**

**Civ. A. No. 75–1809.**

United States District Court, District of Columbia.

Dec. 16, 1975.

J. Edward Day, William F. Taylor, Cox, Langford & Brown, Washington, D.C., for plaintiff.

Kenneth Wells Parkinson, Nicholas S. McConnell, Jackson, Parkinson & Jɛˑk-son, Washington, D.C., for intervenor.

Paul M. Tschirhart, Asst. U. S. Atty., Eugene R. Sullivan, Atty., U. S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SIRICA, District Judge.

The parties in the above entitled matter are presently before the Court on cross-motions for summary judgment. They have submitted memoranda in support of their respective motions and have orally presented their positions in open court.

Plaintiff Associated Third Class Mail Users (hereafter "ATCMU") is a nonprofit organization, organized under the corporation laws of the District of Columbia for the purpose of improving the use of third-class mail for its members. Plaintiff-intervenor National Easter Seal Society for Crippled Children and Adults (hereafter "Easter Seals") is a nonprofit corporation organized under the laws of the state of Ohio for the purpose of providing a program of direct service, education and research for physically handicapped persons.

Defendant United States Postal Service (hereafter "Postal Service") is an independent establishment of the executive branch of the government, created by statute by Congress to provide postal services for the United States of America. Defendant Postal Rate Commission (hereafter "Rate Commission") is an independent establishment of the executive branch of the government of the United States, created by act of Congress. Defendants Clyde S. DuPont (Chairman), Paul A. Miltich, Kieran O'Doherty, Frank P. Saponaro, and Carlos C. Villarreal are members of the Rate Commission.

## MATERIAL FACTS

On September 4, 1975, a meeting of the Board of Governors of the Postal Service (hereafter "Board") was held. At that meeting the Board was advised by the Assistant Postmasters for Finance and for Rates and Classification that projections of revenues and expenses for fiscal year 1976 showed that the Postal Service would be faced with a deficit if postal rates remained at the current levels.

The Board was further advised that extensive preparation was necessary to

permit a filing of a rate request with the Rate Commission in accordance with the Commission's rules of practice; that such preparation had been going on for several months; that significant adjustments would have to be made to what had already been prepared as a result of the latest guidelines issued in the Rate Commission's opinion of August 28, 1975; but that the general outline of what the postal management considered to be appropriate adjustments to the various postal rates was reasonably clear. Specific dollar amounts for the proposed increases for the various classes of mail were not presented to the Board at that meeting. After this presentation by postal officials, the Board directed the Postal Service to complete its preparation of the request and file it with the Rate Commission no later than September 19, 1975. The Postal Service submitted the request for proposed rate increases with the Rate Commission on September 18, 1975.

Also at the meeting of September 4, 1975, the Board discussed the level of fees for various other services, and agreed that the Postal Service should increase these fees as soon as reasonably possible. Based upon this determination by the Board, on September 19, 1975, the Postal Service published a notice in the Federal Register, soliciting comments on proposed increases in fees for these services.

Subsequent to the meeting of the Board on September 4, 1975, the Postal Service announced that it would place into effect new "temporary" postal rate increases as of December 28, 1975, and new fees for various other services to become effective on January 3, 1976.

## PLAINTIFF'S CONTENTIONS

Plaintiff ATCMU challenges the proposed imposition of the new "temporary" rates, contending that such imposition would be illegal. ATCMU alleges that the purported "request" of the Board filed with the Rate Commission on September 18, 1975, is invalid since the Board failed to approve the request as required by the Postal Reorganization Act and the Rules of the Board. Since, plaintiff contends, a valid request having been made to the Commission is a condition precedent to the imposition of temporary changes in postal rates, and there being no valid request before the Commission at this time, the imposition of temporary rates would be illegal.

Plaintiffs ATCMU and Easter Seals assert that the proposed January 3, 1976 imposition of increased fees for various other services would also be illegal. Plaintiffs contend that it is illegal for the Postal Service to increase fees for special and other services without complying with the procedures set out in Chapter 36 of the Postal Reorganization Act. In particular, plaintiffs state that the Postal Service may not increase such fees without first requesting a recommended decision from the Rate Commission. Since it is uncontested that the Postal Service did not request such a recommendation in this case, plaintiffs argue that the new increases may not legally be imposed.

## CONCLUSIONS OF LAW

### I. Temporary Postal Rate Increases

■ The first issue, the legality of the temporary rates scheduled to go into effect on December 28, 1975, centers on plaintiff's contention that the rate request submitted by the Postal Service to the Rate Commission on September 18, 1975, was invalid.

It is clear to the Court from a careful reading of the Act that both the authority and the power to request recommendations for changes in postal rates lies with the Board of Governors, and no one else.

Section 202 of the Act, entitled "Board of Governors" states, "(a) The *exercise* of the power of the Postal Service shall be directed by the Board of Governors . . . ." (emphasis added). This section takes on more specific relevance to the instant case when read

with Chapter 4 of the Act which delineates the general authority of the Postal Service which the Board is charged with directing. Specifically Section 404 reads, in pertinent part:

§ 404. Specific powers

Without limitation on the generality of its powers, the Postal Service shall have the following specific powers, among others:

\* \* \* \* \* \*

(2) to prescribe, in accordance with this title, the amount of postage and the manner in which it is to be paid; . . ..

In Chapter 36 of the Act we find even more specific language indicating that the Board is charged with the duty to direct the rate-making process and to request recommended decisions from the Rate Commission:

§ 3621. Authority to fix rates and classes

Except as otherwise provided, the Governors are authorized to establish . . . reasonable and equitable mail and reasonable and equitable rates of postage . . . in accordance with the provisions of this chapter. Postal rates and fees shall be reasonable and equitable and sufficient to enable the Postal Service under honest, efficient and economical management to maintain and continue the development of postal services of the kind and quality adapted to the needs of the United States. . . .

\* \* \* \* \* \*

§ 3622. Rate and fees

(a) From time to time the Postal Service shall request the Postal Rate Commission to submit a recommended decision on changes in a rate or rates of postage . . . if the Postal Service determines that such changes would be in the public interest and in accordance with the policies of this title. The Postal Service may submit such suggestions for rate adjustments as it deems suitable.

Thus, reading these sections of the Act in relation to each other, §§ 202, 404(2), 3621 and 3622(a), it is apparent, absent a proper delegation of its authority to another party or parties in accordance with the provisions of the statute, that the Board, in directing the exercise of power of the Postal Service, has the sole authority to request a recommended decision from the Rate Commission.

Although there is a general delegation of authority provided in the Act, § 402, which provides that the Board may delegate the authority vested in it to the Postmaster General, it is clear that such a delegation is not applicable in the instant case. The Board, although delegating some power to the Postmaster General through its By-Laws (39 C.F.R. § 3.9), has certainly withheld any delegation of its authority to request recommended decisions by the Commission. The Operating Procedures adopted by the Board provide, in pertinent part:

*Decisions of the Board*

The procedures establish a system under which the Board will make those decisions which by statute the Board, or the presidentially-appointed Governors, are required to make and under which the Board will make any additional decisions and approve such actions recommended by postal management as are of sufficient importance in the judgment of the Board, to require Board action.

II. *Actions Requiring Decision by the Board of Governors.*

The following matters are reserved for decision by the Board of Governors:

\* \* \* \* \* \*

8. Requests to the Postal Rate Commission for recommended decisions on postal rates and mail classification, and action upon such recommended decisions (by the Governors, 39 U.S.C. § 3625). (Exhibit A, Defendant's Statement of Facts As To Which There Is No Genuine Issue)

From this analysis it is obvious that the Board, and they alone, retain the authority to request recommended decisions from the Rate Commission. There is nothing in either the statute or the Board's rules which relieves it of this responsibility.

■ This being the case, the critical question is whether the Board made a proper, valid, and considered request of the Rate Commission in its submission of September 18, 1975.

Plaintiff contends that the presentation made to the Board by the postal management on September 4, 1975, was so vague that the Board could not reasonably exercise an informed judgment concerning the proposed size and allocation of the proposed rate increase. Defendant simply responds that the presentation was sufficient to satisfy the statutory requirements.

It is uncontested, as stated in defendant's statement of material facts as to which there is no genuine issue, that the specific proposed increases for the various classes of mail were not submitted to the Board at that presentation. Also, it is clear that the supporting data and documentation for the proposed increases was not before the Board; that it was not complete and that "significant adjustments" would have to be made in that portion already prepared to bring the filing into line with the guidelines announced by the Rate Commission in its opinion of August 28, 1975 (issued only seven days prior to the meeting of the Board), particularly in regard to cost attributions to the several categories of mail. What was placed before the Board was a "general outline of what *postal management* considered to be appropriate adjustments to the various postal rates" and the "general magnitude of increases in revenue which *management deemed necessary and appropriate* for each of the principal categories of mail" (Defendants' Statement of Material Facts As To Which There Is No Genuine Issue, pp. 3, 4 emphasis added). On oral argument, counsel for

defendants confirmed that this is an accurate representation of the presentation made to the Board on September 4, 1975.

What the Board approved then was a "request" based upon a presentation of what the postal management considered "necessary and appropriate" without specific proposed rates and absent the supporting data which would be submitted to the Rate Commission upon completion.

■ It is the opinion of this Court that, in order for the Board to make a valid request under § 3622 of the Act, the Board must have before it for its consideration at the time it approves the request, the specific rates and fees to be requested, together with supporting data and documentation. To find otherwise would be to permit the Board to evade its statutory duty under the Act.

At several points in the Act, Congress reiterates the postal policy and the obligation of the Governors to assure that postal rates will be established on a "fair and equitable" basis and in the "public interest." (See §§ 101(d), 403(a) and (c), 3621, and 3622.) More specifically, Congress states in Section 3622 that ". . . the Postal Service shall request the Postal Rate Commission to submit a recommended decision on a change in a rate or rates of postage . . . if the Postal Service *determines* that such changes would be [1] in the public interest and [2] in accordance with the policies of this title." (39 U. S.C. § 3622, emphasis added).

Clearly, "request," as used in this statute demands that the Board make a *determination*, an informed decision, as to whether the proposed rate or rates are (1) in the public interest and (2) in accordance with the policies of the Act, specifically with § 101(d) of the "Postal Policy," which requires that "postal rates be established . . . on a fair and equitable basis."

It would be ludicrous to think that the Board could make an intelligent, informed determination of whether the

proposed rates are fair and equitable and in the public interest without having before it information as to the specific rates to be requested for each category of mail, together with their supporting data.

To hold, as defendant suggests, that it is sufficient for the Board to review and approve the "general magnitude" of increases or the "general outline" of what postal management considers to be appropriate adjustments for a request to be valid, would be to free the Board of a decision which it is statutorily obliged to make. And it is a settled principle of Administrative Law that "those legally responsible for a decision must in fact make it, . . ." KFC National Management Corp. v. N.L.R.B., 497 F.2d 298, 304 (2d Cir. 1974).

Since, in the opinion of this Court, it is necessary for the Board to have the specific proposed rates before it together with supporting data when approving a request for a recommended decision of the Rate Commission, and since these items were not before the Board when it approved the request on September 4, 1975, the request submitted September 18, 1975, which is presently before the Rate Commission is invalid and may not properly be considered by the Rate Commission.

This having been decided, it is necessary to turn to the question of the legality of the temporary rates presently scheduled to take effect on December 28, 1975.

Section 3641 of the Act gives the Postal Service the power to place new, temporary rates into effect pending Rate Commission action on a request for new permanent rates:

§ 3641. Temporary changes in rates and classes

(a) If the Postal Rate Commission does not transmit to the Governors within 90 days after the Postal Serv-

ice has submitted . . . to the Commission a request for a recommended decision on a change in rates of postage, . . . the Postal Service, upon 10 days' notice in the Federal Register, may place into effect temporary changes in rates of postage . . . it considers appropriate to carry out the provisions of this title.

There is no question that the power of the Postal Service to place temporary rates into effect is vested in the Board "since the Board of Governors exercises the power of the Postal Service to set temporary rates. (See 39 U.S.C. §§ 102, 202, 3641 (1970))." Mail Advertising Corporation of America, Inc., et al. v. U. S. Postal Service, 148 U.S. App.D.C. 158, 459 F.2d 1182, 1183 (1970).

As a practical matter, the imposition of "temporary" rates has the result of placing into effect rates which are equal to the requested new permanent rates pending before the Rate Commission. As experienced by the only two other requests for recommended decisions which have been submitted to the Rate Commission since the passage of the Act in 1970, many months normally pass between the submission of the request and the final approval of new permanent rates.[1] This being the case, the imposition of temporary rates is a serious matter and one which must be carefully considered by the Board.

In permitting the Postal Service to place these temporary rates into effect, the Act requires that they be predicated upon a valid request for recommended decision having been submitted to the Rate Commission. Section 3641(c) reads:

(c) A rate of postage for a class of mail . . . under a temporary change under this section may not exceed the lesser of (1) the rate or fee requested for such class . . ., or (2) a rate or fee which is more than

---

[1]. In the first case, which began in 1971, 14 months passed between the imposition of temporary rates and the final approval of new permanent rates. And, in the second case, which began in 1973, 18 months elapsed.

one-third greater than the permanent rate or fee in effect for that class . . . *at the time a permanent change in the rate . . . is requested under section 3622 of this title.* (emphasis added) By limiting the temporary rate in this way, Congress *insured that the temporary rates* could be no higher than those requested and *determined* to be fair and equitable and in the public interest by the Board under § 3622.

Thus, the Act demands that a valid request must be before the Rate Commission before temporary rates may be imposed. Absent this prerequisite, the imposition of temporary rates would be illegal. This Court having decided that there is no *valid* request for a recommended decision presently before the Rate Commission, the imposition of temporary rates on December 28, 1975, would be clearly improper, and the defendants are hereby enjoined from doing so.

## II. INCREASES IN CERTAIN OTHER CHARGES

The Postal Service has announced that it intends to increase charges for certain other services on January 3, 1976, and contends that it need not submit requests for recommended decisions to the Postal Rate Commission for changes in the fees for such services. Plaintiffs ATCMU and Easter Seals argue that any increase in the fees for these services would be illegal since changes in such fees are subject to provisions of §§ 3622, 3624 and 3625 of the Act. The services in question here include:

(1) the furnishing of mail list corrections;

(2) the privilege of prepayment of postage without stamps;

(3) the forwarding or returning of undeliverable mail;

(4) the registry of mail;

(5) the insurance of mail;

(6) the provision of COD mail;

(7) the certification of mail;

(8) the securing of a signed receipt upon the delivery of mail and the returning of it to the sender;

(9) special delivery;

(10) the special handling of mail;

(11) the provision of money orders.

It is clear that nearly all of these other services are very closely related to the delivery of mail. The single possible exception is the selling of money orders, since they can be used equally as well without being delivered by mail. But it does seem that the vast majority of money orders sold at post offices are actually sent by mail. Therefore, it appears safe to say that all of these services would be considered "postal services" in ordinary parlance.

Is is also clear that the fees set for these services have substantial public effect. Collectively, these services presently account for $403 million annually in revenues; if the increases go into effect, the services are projected to bring in a total of $490 million in revenues a year. In contrast, second-class mailers presently account for substantailly less revenue—$295 million a year. Evidence of the impact of these increases on individual consumers is less precise. Intervenor Easter Seals has indicated, however, that the proposed increase in the fees for mailing list corrections alone would cost it an additional $200,000 a year. And it is even likely that the proposed increase in the fees for money orders would have a substantial impact on some who cannot readily find a cheaper substitute.

The issue posed is whether the Postal Reorganization Act of 1970 requires that changes in the fees for these services be subject to the scrutiny of a Postal Rate Commission proceeding, as provided in Chapter 36 of the Act. That Chapter provides that the Postal Rate Commission must hold full and adjudicatory hearings governed by 5 U.S.C. §§ 556 and 557 upon a request submitted by the Postal Service for a recommended decision of a change in rates or fees. ATCMU, Easter Seals, the

Postal Rate Commission and the Comptroller General all argue that the Act does make changes in these fees subject to Postal Rate Commission jurisdiction. The Postal Service, on the other hand, asserts that the Act gives it exclusive authority to increase these fees, subject only to the general rule making provisions of 5 U.S.C. § 553 (1970).

This Court finds a substantial indication of Congressional intent in the responsibilities given to the Postal Service and the Postal Rate Commission under the statute. The management of the Postal Service is in the hands of the Board of Governors. This group is structured much like the board of directors of a large corporation: it consists of the Postmaster General, the Deputy Postmaster General, and nine persons appointed by the President who serve, much like their counterparts in private industry, on a part-time basis. These nine "governors" unquestionably bring to their positions a wealth of experience in business generally, and no doubt represent as well as they can the public interest as they see it. But lacking formal hearing procedures they cannot be fully aware of the problems of the many groups or classes of consumers who may be affected by all of the proposed increases at issue here.

The Postal Rate Commission, on the other hand, consists of five persons employed full-time and selected by the President on the basis of their expertise in economics, pricing policy, and related subjects. Their actions on requests for recommended decisions are taken only after adjudicatory hearings. *See* 39 U.S.C. §§ 3624(a), 3661(c) (1970). It seems at the outset, then, that Congress intended, by its creation of the Rate Commission, that changes in fees such as these, which would likely have a substantial impact on sizeable and diverse groups in society, be tested by the full procedures provided in a Postal Rate Commission proceeding to determine the need for the increase and the practicability of less onerous alternatives.

The Postal Service asserts, however, that Congress did not intend to subject these services to the requirements of Chapter 36. It argues that the services at issue were not of sufficient importance to justify the additional costs that an adjudicatory proceeding under 5 U.S.C. §§ 556 and 557 would entail as compared to those of a rule making proceeding under 5 U.S.C. § 553. It points out, as evidence of this intent, the fact that in prior legislation dealing with the Postal Service, the Postmaster General had authority to change the fees here in question without seeking authorization from Congress. *See* 39 U.S.C. §§ 507, 5009, 5010 (1964 ed.); 39 U.S.C. § 4106 (1964 ed., Supp. V).

It appears to the Court that this argument is without merit. It totally ignores the significance of the changes produced by the Act. Prior to the Act, the Rate Commission did not exist. In the Postal Rate Commission, Congress created an independent body with the necessary expertise and procedures, which is willing and able to take up the study of these increases. Nor can the Postal Service claim that the submitting of requests for recommended decisions to the Rate Commission would unduly limit its control over these fees; for, under Chapter 36, the Postal Service would be permitted, with slight limitation to make increases on a "temporary" basis 90 days after sending a request to the Commission.

A closer analysis of the statute itself supports this conclusion.

The crucial passage upon which this issue turns appears in 39 U.S.C. § 3622(a) (1970). There the Act provides that:

> [f]rom time to time the Postal Service shall request the Postal Rate Commission to submit a recommended decision on *changes in a rate or rates of postage or in a fee or fees for postal services* . . . . (emphasis added)

The Postal Service seeks very limited interpretation of the phrase "fee or fees

for postal services" arguing that it does not refer to the fees for services in question here, but only to such charges as the annual $30 fee that bulk mailers must pay for the privilege of using that rate, or the fee for the privilege of using business reply mail.

ATCMU, Easter Seals, the Rate Commission and the Comptroller General do not deny that these fees cited by the Postal Service are included in "fee or fees for postal services." They simply argue that, in addition, this phrase includes the fees for the other services in question here as well. As indicated above, this interpretation appears to accord quite well with the common meaning of the term "postal services."

The Postal Service, in attempting to limit the scope of the phrase "fee or fees for postal services," cites two other provisions of the Act to support its construction. First, it refers to § 4(a) of the Act, 39 U.S.C. § 201 note (1970), which states:

[t]here are hereby transferred to the United States Postal Service all the functions, powers and duties of the Post Office Department and the Postmaster General of the Post Office Department . . . .

The Postal Service argues that by this provision Congress intended to transfer to the Postal Service the power the Postmaster General had previously to change unilaterally the fees on the services at issue here. The Court has already discussed above why it finds very little helpful to the Postal Service's position in the fact that the Postmaster General had that power in prior legislation. In addition, since Congress spent one entire chapter, Chapter 4 of the Act, delineating the powers and duties of the

Postal Service under the new system, this Court thinks it highly unlikely that Congress would use such an obscure device for transferring additional power to the Postal Service. Rather, it is obvious that the provision was intended simply to insure the orderly transfer of power and duty.

Secondly, the Postal Service points to 39 U.S.C. § 404(6) to support its interpretation of the phrase "fee or fees for postal services." Here it finds its strongest argument.

Section 404(6) gives the Postal Service the power "to provide, establish, change, or abolish special[,] nonpostal or similar services."[2] The terms "special" and "other similar services" clearly encompass the services at issue here.[3] And it may be conceded that the power to "change" these services includes the power to increase the fees for them. But this does not get the Postal Service very far. For any increases in these fees may still be subject to review by the Postal Rate Commission under § 3622. On this point, the Postal Service argues that, since this power is not specifically made subject to the Postal Rate Commission's jurisdiction, it is clear that Congress intended that it not be. It argues that this omission is especially significant, since § 3621 gives the governors of the Postal Service the power to establish "reasonable and equitable rates of postage and fees for postal services *in accordance with the provisions of this chapter* [giving jurisdiction to the Postal Rate Commission]. (emphasis added)

Another possible explanation for the omission—and perhaps a more reasonable one—is that Congress simply thought it unnecessary to put it in. But even if it be conceded that § 404(6)

2. It is generally agreed that the absence of a comma between "special" and "nonpostal" was inadvertent.

3. It is not certain exactly what "nonpostal" refers to. Likely it encompasses such activities as selling United States savings bonds for the Treasury, maintaining a country-wide information service on civil-service examina-

tions for all government positions, and conducting examinations for the Civil Service Commission. Letter from Comptroller General of the United States Elmer Staats to Chairman of the Committee on Post Office and Civil Service David N. Henderson, at 3–4 (October 28, 1975). Clearly, however, it does not refer to any of the services at issue here.

gives some credence to the Postal Service's position, this Court thinks that § 3661 provides an effective counterweight. That section deals with changes in the "nature of postal services which will generally affect service on a nationwide or substantially nationwide basis." It is highly improbable in this Court's view that Congress would devote a whole section to the kinds of "postal services" that the Postal Service is arguing are the sole subject of that term—for example, the $30 annual fee for bulk mailers and the fee for the privilege of using business reply mail. And it is difficult to believe that Congress would seek to distinguish between changes in those services that would have a nationwide impact and those that would not. Rather, it is much more reasonable to conclude that the term "postal services" was meant to embrace also those special and other services which are the subject of this litigation.

In conclusion, a careful analysis of the statute leads this Court to find that the Postal Rate Commission has jurisdiction over changes in the fees for the services at issue here. Therefore, the Court holds that the Postal Service cannot increase its fees for these services until it has complied with the provisions of sections 3622, 3624, and 3625 of Chapter 36 of the Act. The Postal Service is hereby enjoined from placing into effect the increased charges for such services on January 3, 1976.

### ORDER

Accordingly it is by the Court this 16th day of December, 1975,

Ordered that the plaintiff's motions for summary judgment be, and the same hereby are, granted; and it is

Further ordered:

1. That since there is no valid request presently before the Postal Rate Commission for a recommended decision on postal rates, defendants may not legally set or put into effect temporary increases in postal rates until a legal request is made and the other statutory requirements of Chapter 36 of the Act are met.

2. That defendant Postal Service may not legally set or put into effect increased fees as they have proposed in 40 Fed.Reg. 43233–34 (Sept. 19, 1975) unless and until they submit such proposed adjustments to the Postal Rate Commission for a recommended decision and follow the procedures prescribed in Chapter 36 of the Act.