**ASSOCIATED THIRD CLASS MAIL USERS, National Easter Seal Society For Crippled Children and Adults**

v.

**UNITED STATES POSTAL SERVICE, Appellant Postal Rate Commission, et al.**

**ASSOCIATED THIRD CLASS MAIL USERS, National Easter Seal Society For Crippled Children and Adults**

v.

**UNITED STATES POSTAL SERVICE POSTAL RATE COMMISSION, et al., Appellants.**

**Nos. 75–2227, 75–2228.**

United States Court of Appeals, District of Columbia Circuit.

Oct. 3, 1980.

**OPINION ON REMAND**

Before BAZELON, Senior Circuit Judge, and ROBINSON and MacKINNON, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

This litigation returns to us on remand by the Supreme Court[1] for reconsideration of our prior decision.[2] The occasion for the remand was the adoption of new procedures by the Board of Governors of the United States Postal Service relating to changes in postal rates.[3] Perceiving no basis upon which relief may now be appropriately

---

1. *United States Postal Serv. v. Associated Third Class Mail Users,* 434 U.S. 884, 98 S.Ct. 253, 54 L.Ed.2d 169 (1977).

2. *Associated Third Class Mail Users v. United States Postal Serv.,* decided as part of *National*

*Ass'n of Greeting Card Publishers v. United States Postal Serv.,* 186 U.S.App.D.C. 331, 354–363, 569 F.2d 570, 593–603 (1976).

3. These procedures are set forth in text *infra* at note 12.

granted, we remand the case to the District Court for disposition accordingly.

## I

The relevant events may be briefly summarized.[4] In 1975, by direction by the Board, the Postal Service requested a recommended decision by the Postal Rate Commission on proposals for new postage rates.[5] Thereafter, the Postal Service gave notice that it would effectuate temporary rate increases on a designated future date if the Commission's decision did not come forth by then.[6] Associated Third Class Mail Users (ATCMU) then brought an action in the District Court to block the temporary increases. ATCMU argued centrally that the Postal Service's request was procedurally defective because, at the time of the Board's approval, it did not have the specific rates before it, as allegedly was required by the Board's bylaws, and that temporary charges based upon that request could not legally be implemented.[7]

The District Court agreed with ATCMU and enjoined operation of the temporary rates until such time as a valid request might be sent to the Commission.[8] However, we stayed the injunction,[9] and the temporary charges thus went into effect. Later, utilizing procedures unquestionably lawful, the Board authorized resubmission of the request and, that being done, the injunction expired by its own terms. Some months thereafter, the Commission announced its recommended decision, whereupon the Postal Service made the changes permanent.

Subsequently, we issued our decision affirming the District Court's injunction, essentially on the theory advanced by ATCMU.[10] The Postal Service petitioned for rehearing and suggested rehearing *en banc*; those efforts failing,[11] it sought a writ of certiorari from the Supreme Court. Meanwhile, and after rendition of our decision, the Board commenced rulemaking proceedings which culminated in revision of the operating procedures found violated. As amended, the Board's bylaws now provide:

> The following matters are reserved for decision by the Board of Governors: . . .
>
> (h) Authorization of the Postal Service to request the Postal Rate Commission to submit a recommended decision on changes in postal rates, including specific authorization of the amount of revenue estimated to be required so that total estimated income and appropriations will equal total estimated costs as nearly as practicable.[12]

With that, the Supreme Court granted certiorari, vacated our judgment and remanded the case for our "further consideration in light of the . . . amended provisions of the

---

4. For a fuller discussion of the factual background to the point of our earlier decision, see *National Ass'n of Greeting Card Publishers v. United States Postal Serv., supra* note 2, 186 U.S.App.D.C. at 354–355, 569 F.2d at 593–597. Concomitantly with the quest for higher postage rates, the Postal Service, with Board sanction, unilaterally increased fees for various special postal services. See *id.* The petition for certiorari leading to remand of the case, however, expressly disavowed any desire to seek review of our ruling in regard to the fees for services. Petition for Certiorari at 7 n.3, *United States Postal Serv. v. Associated Third Class Mail Users, supra* note 1. Consequently, we are to reconsider on this remand our prior decision only to the extent that it relates to postage rates.

5. See 39 U.S.C. §§ 3621–3627 (1976), as now amended, 39 U.S.C.A. §§ 3621–3627 (1978 Supp.).

6. See 39 U.S.C. § 3641 (1976).

7. See *Associated Third Class Mail Users v. United States Postal Serv.*, 405 F.Supp. 1109, 1111 (D.D.C.1975).

8. *Id.* at 1111–1118.

9. *Associated Third Class Mail Users v. United States Postal Serv.*, No. 75–2227 (D.C.Cir. Dec. 29, 1975) (order).

10. *National Ass'n of Greeting Card Publishers v. United States Postal Serv., supra* note 2, 186 U.S.App.D.C. at 355–356, 569 F.2d at 594–603.

11. *Associated Third Class Mail Users v. United States Postal Serv.*, No. 75–2227 (D.C.Cir. Apr. 21, 1977) (two orders).

12. 39 C.F.R. § 3.4 (1979).

Board of Governors' internal operating procedures."[13]

## II

The question initially confronting us is whether the litigation became moot when the Board of Governors adopted this provision. As a federal court we may decide only an actual case or controversy;[14] in every instance, we must be presented with a "definite and concrete" problem that "touch[es] the legal relations of parties having adverse legal interests."[15] So, when the subject of previous dispute has disappeared, we normally lose jurisdiction to act.[16] That, we find, is largely the situation here.

When this case was first before us, we examined it to determine whether even then it was moot. As we have indicated, after the District Court held the temporary increases invalid the Board concluded a detailed review of the sought-after rates and submitted a new request therefor to the Commission.[17] Additionally, the District Court's injunction—the object of the Postal Service's appeal—automatically expired upon that resubmission.[18] There are, however, exceptions to the mootness doctrine, and we refused to dismiss the appeal as moot for two well established reasons. In the first place, although the Postal Service had conformed its ratemaking effort to the District Court's directives,[19] we saw its corrective action as merely a response thereto under protest and in expectation of appeal.[20] For that reason, we adhered to the principle that " 'voluntary cessation of alleged illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot.' "[21] We realized, too, that with ATCMU's continuing interest in lawful charges, and the Postal Service's insistence that the District Court's order was erroneous, there was " 'a reasonable expectation that the same complaining party [will] be subjected to the same action again.' "[22] That, coupled with the short-lived nature of the District Court's injunction, we held, brought the case within the mootness exception for conduct " 'capable of repetition, yet evading review.' "[23]

█ These conditions no longer obtain. By amendment of its bylaws, the Board has now modified its operating procedures to legitimatize the rate-requesting methodology found improper under the prior bylaws.

---

13. *United States Postal Serv. v. Associated Third-Class Mail Users, supra* note 1.

14. United States Const., art. III, § 2; see also *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683, 690 (1976); *Sosna v. Iowa,* 419 U.S. 393, 402, 95 S.Ct. 553, 559, 42 L.Ed.2d 532, 542 (1975).

15. *DeFunis v. Odegaard,* 416 U.S. 312, 317, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164, 169 (1974), quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 621 (1937).

16. See *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712 ·713, 35 L.Ed.2d 147, 161 (1973); *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113, 117 (1969).

17. See *National Ass'n of Greeting Card Publishers v. United States Postal Serv., supra* note 2, 186 U.S.App.D.C. at 355, 569 F.2d at 594.

18. See *id.* & n.107, 569 F.2d at 594 & n.107.

19. See *id.* at 355 356 n.107, 569 F.2d at 594·- 595 n.107.

20. *Id.* at 357 n.107, 569 F.2d at 595 n.107.

21. *Id.,* quoting *United States v. W. T. Grant,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303, 1309 (1953).

22. *National Ass'n of Greeting Card Publishers v. United States Postal Serv., supra* note 2, 186 U.S.App.D.C. at 356 n.107, 569 F.2d at 595 n.107, quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 353 (1975).

23. *National Ass'n of Greeting Card Publishers v. United States Postal Serv., supra* note 2, 186 U.S.App.D.C. at 356 n.107, 569 F.2d at 595 n.107, quoting *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911), and also citing *Nebraska Press Ass'n v. Stuart, supra* note 14, 427 U.S. at 546, 96 S.Ct. at 2797, 49 L.Ed.2d at 690; *Sosna v. Iowa, supra* note 14, 419 U.S. at 397–403, 95 S.Ct. at 556–559, 42 L.Ed.2d at 539–540; *Golden Holiday Tours v. CAB,* 174 U.S.App. D.C. 292, 294, 531 F.2d 624, 626 (1976).

The current bylaws make it ever so plain that the particular rates to be requested need not be brought before the Board.[24] Thus repetition of the challenged conduct could not afford ground for relief, and the mootness exceptions previously applicable are now unavailing.[25]

ATCMU urges, however, that a controversy continues over restitution of postal charges to the extent that for a while they were excessive. It will be recalled that the District Court's injunction, which would have restrained implementation of the temporary rates and fees, was stayed pending appeal.[26] Resultantly, for a short period [27] mail users incurred postage expense higher than they would have encountered had the injunction—which we ultimately affirmed—remained in effect. On the original appeal, ATCMU asserted a claim for restitution on this ground, but neither in our opinion nor our judgment did we honor it.

■ We are unable to reconsider the question now. ATCMU did not seek rehearing by this court or review by the Supreme Court on the restitution issue, and of course no question concerning it was raised in the Postal Service's petition for certiorari.[28] It is well-settled that on an

adversary's appeal a party may not challenge or seek to enlarge a judgment to which he did not himself object.[29] It follows that ATCMU cannot resurrect the restitution issue on the remand precipitated by the Postal Service.

### III

■ There is, however, a final point remaining alive. When this case was last before us, we expressly reserved the question whether—aside from the Board's bylaws—the Postal Act itself "mandate[d] the Board's thorough involvement in the process of submitting rate requests"; [30] there was no need to reach the issue, we found, because the Board had in any event violated its internal operating procedures.[31] Since those procedures have now dropped out of the case, we must determine whether by statutory command a request for particular rates need be brought before the Board.

It is true that we noted, during our first exposure to this litigation, that "it is the Board 'which exercises the power of the Postal Service to set temporary rates.'" [32] That does not mean, however, that a repetition of the challenged conduct would run afoul of the statute. Congress unambigu-

---

**24.** See text *supra* at note 12.

**25.** Compare *Relf v. Weinberger*, 184 U.S.App. D.C. 147, 152, 565 F.2d 722, 727 (1977).

**26.** See text *supra* at note 9. The stay was granted only after oral argument and full consideration of the equities that would compete during pendency of the appeal. Subsequently, Chief Justice Burger denied a petition for emergency vacatur of the stay.

**27.** That period extended from the effective date of the stay to expiration of the District Court's injunction.

**28.** The petition presented only these questions:
1. Whether a suit to enjoin implementation of a temporary mail rate became moot when the challenged rate was superseded.
2. Whether the alleged failure of the Governors of the United States Postal Service to follow their unpublished, internal operating procedures in directing the Postal Service to submit a request for a rate change to the United States Postal Rate Commission renders invalid a temporary rate based upon that request.

3. Whether the Governors of the Postal Service were mistaken in believing that they had followed their own procedures.
Petition for Certiorari at 2, *United States Postal Serv. v. Associated Third Class Mail Users*, *supra* note 1.

**29.** See *United States v. American Ry. Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087, 1093 (1924). See also *Swarb v. Lennox*, 405 U.S. 191, 201, 92 S.Ct. 767, 772–773, 31 L.Ed.2d 138, 146–147 (1972); *Morley Constr. Co. v. Maryland Cas. Co.*, 300 U.S. 185, 191, 57 S.Ct. 325, 328, 81 L.Ed. 593, 597 (1937).

**30.** *National Ass'n of Greeting Card Publishers v. United States Postal Serv.*, *supra* note 2, 186 U.S.App.D.C. at 362 n.138, 569 F.2d at 601 n.138.

**31.** *Id.*

**32.** *Id.*, quoting *Mail Advertising Corp. of America v. United States Postal Serv.*, 148 U.S.App. D.C. 158, 159, 459 F.2d 1182, 1183 (1972).

ously declared that "*the Postal Service* shall request the Postal Rate Commission to submit a recommended decision in a rate or rates of postage or in a fee or fees for postal service . . . ." [33] That, of course, was precisely the action taken by the Postal Service and attacked by ATCMU in round one of this litigation.[34] And while the Act also requires that "exercise of the power of the Postal Service shall be directed by [the] Board of Governors," [35] this legislative mandate was, again, met in the instant case: the Board authorized the Service to submit what proved to be its controversial request for rate increases.[36] Equally telling, the Act, unlike the Board's old bylaws, does not suggest that the Board must approve in advance the particular rates or fees to be requested. There is, then, no potential statutory violation to justify injunctive relief, and no statutory reed to which ATCMU may cling in its attempt to keep this Methuselahan litigation alive any longer.

For the reasons stated, we remand this case to the District Court for vacatur of its judgment [37] and dismissal of ATCMU's action as moot.

*So ordered.*

---

**33.** 39 U.S.C. § 3622(a) (1976) (emphasis added).

**34.** See *National Ass'n of Greeting Card Publishers v. United States Postal Serv., supra* note 2, 186 U.S.App.D.C. at 353–354, 569 F.2d at 593 -594.

**35.** 39 U.S.C. § 202(a) (1976).

**36.** See *National Ass'n of Greeting Card Publishers v. United States Postal Serv., supra* note 2, 186 U.S.App.D.C. at 354, 569 F.2d at 593.

**37.** *United States v. Munsingwear, Inc.*, 340 U.S. 36. 39–40 & n.2, 71 S.Ct. 104, 105 & n.2, 95 L.Ed. 36, 41 & n.2 (1950).