**Leon G. LIPSCOMBE, Sr., Appellant,**

v.

**McKinley CRUDUP, Appellee.**

**No. 04–CV–931.**

District of Columbia Court of Appeals.

Argued Nov. 22, 2005.

Decided Dec. 22, 2005.

---

J. Erik Bell, with whom John C. Lynch was on the brief, for appellants.

William P. Farley, Washington, for appellee.

Before FARRELL, RUIZ, and FISHER, Associate Judges.

FARRELL, Associate Judge:

McKinley Crudup sued the Reverend Leon G. Lipscombe, Sr., for defamation, invasion of privacy, and intentional infliction of emotional distress. The complaint alleged that Rev. Lipscombe had falsely declared at a public gathering that a sexual harassment suit had been brought against Mr. Crudup. At the time, Rev. Lipscombe was the Pastor of the Allen Chapel African Methodist Episcopal Church, where Crudup had been a member since 1964 and was presently a Trustee Emeritus. The complaint alleged that, in response to inquiries Crudup and others

had been making about possible misuse of church funds by the Pastor, Rev. Lipscombe "made up the [s]tatement that Mr. Crudup was charged with sexual harassment to cover up [the] misappropriation ... and to discredit Mr. Crudup."[1] The complaint further alleged that no such suit had been brought against Crudup, and that the defendant knew this to be so.

Rev. Lipscombe moved to dismiss the suit for lack of subject matter jurisdiction, *see* Super. Ct. Civ. R. 12(b)(1), asserting that the complaint did not plead facts sufficient to establish the court's jurisdiction over a suit that threatened to "implicat[e] secular interests in matters of purely ecclesiastical concern." *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 710, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *see Bible Way Church v. Beards,* 680 A.2d 419, 430 (D.C.1996) ("[W]hen [the religion clauses of] the First Amendment cast[ ] a shadow over the court's subject matter jurisdiction, the plaintiff is obliged to plead unqualified jurisdictional facts that clearly take the case outside the constitutional bar."). The trial court denied this motion from the bench, and the Rev. Lipscombe noted the present interlocutory appeal. *See Heard v. Johnson,* 810 A.2d 871, 876–77 (D.C.2002); *Bible Way Church,* 680 A.2d at 425–26. We affirm.

██ Rev. Lipscombe renews on appeal his contention that Crudup did not allege facts sufficient "clearly [to] take the case outside the constitutional bar" raised by the First Amendment. *West v. Morris,* 711 A.2d 1269, 1272 (D.C.1998) (quoting *Bible Way Church,* 680 A.2d at 430). We are not persuaded. We assume *arguendo* that Crudup was obliged to plead with

---

1. Specifically, the complaint alleged that on January 29, 2004, at a "public gathering" in the District, Rev. Lipscombe had stated "to numerous people ... that he and Allen Church had been in Superior Court because a sexual harassment complaint had been brought against McKinley Crudup."

"greater specificity ... [than] is required ... in other kinds of suits," notwithstanding our doubts whether Rev. Lipscombe has demonstrated—below or in this court—how the present suit might "implicate[ ] a core religious activity." *West*, 711 A.2d at 1272; *see also Heard*, 810 A.2d at 882–83 (applying heightened pleading standard to a defamation claim "aris[ing] *entirely* out of a church's relationship with its pastor" (emphasis added)). Even so, Crudup's complaint made the requisite showing. In essence—*i.e.*, largely discounting its numerous allegations of mismanagement of church finances, or worse, by Rev. Lipscombe—it alleged that the defendant had recklessly made a defamatory statement about Crudup "to numerous people at a public gathering," while knowing that it was false because "Mr. Crudup had never been accused of sexual harassment." Although Rev. Lipscombe was alleged to have made the statement to divert attention from the irregularities of which Crudup accused him, the gravamen of the complaint was the asserted publication of a defamatory falsehood with negligent, and even reckless, disregard for its truth or falsity.

■ Rev. Lipscombe argues, nevertheless, that the complaint failed because it did not specify the "context" of the utterance, including who was present at the gathering—his point apparently being that if only church members were in attendance, the Pastor's statement was privileged, for both common law and First Amendment purposes, as one "about matters of mutual concern or common inter-

est." *Heard*, 810 A.2d at 886 n. 6. First, however, even under a heightened pleading standard, the assertion that the statement was made "to the public in an open meeting" sufficiently alleged that others besides church members were present.[2] Equally important, a statement exclusively to church members would not shield Rev. Lipscombe from liability if, as the complaint alleged, he made the statement recklessly, with knowledge of its falsity— in short, with malice. *Id.; see Moss v. Stockard*, 580 A.2d 1011, 1025 (D.C.1990) (malice, in the context of the common interest privilege, means that the statement was "published at least with reckless or callous disregard for [whether it was true and] its effect upon the reputation of the plaintiff") (footnote omitted). Altogether, we are not persuaded that Crudup was required to plead the defamation with greater specificity for a court and jury to be able to "employ 'neutral principles of law'" to resolve his claims, *Heard*, 810 A.2d at 880 (citation omitted); *see also Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 354 (D.C.2005), or to resolve them without "inquiry into matters of 'ecclesiastical cognizance.'" *Bible Way Church*, 680 A.2d at 427 (citations omitted). Crudup has alleged enough to withstand a motion to dismiss.[3]

It is true, as mentioned earlier, that the complaint makes repeated allegations about the inquiry by Crudup and others into Rev. Lipscombe's "misappropriation" of church funds, and about the Pastor's having "made up the [defamatory] state-

2. Even if that were not true, Crudup's affidavit accompanying his opposition to the motion to dismiss asserted explicitly that "[t]he public gathering was not part of any church service and members from the public, including accountants, heard the Statement." "[I]n deciding a Rule 12(b)(1) motion, [the trial court] may review any evidence submitted by the parties, including affidavits, without converting the motion into a Rule 56 motion for summary judgment." *Bible Way Church*, 680 A.2d at 427 n. 4.

3. Whether he supports the allegations with evidence enough to create triable issues of fact is, of course, yet to be determined.

ment ... to cover up" his misdeeds "and to discredit Mr. Crudup." But the fact that these constitute the alleged *motivation* for the defamatory statement will not require the trial court to adjudicate the actual financial affairs of the church or Rev. Lipscombe's stewardship over them. Although the court may, in its discretion, allow the parties to present limited evidence of these matters by way of background, it will be well advised to instruct the jury that Rev. Lipscombe's conduct of the church's finances—whether he managed them wisely or inappropriately—is irrelevant to the determination whether Crudup has proven defamation and the related counts.[4] Similarly, it should instruct that Crudup's entitlement to damages—including punitive damages, if justified—will entail no consideration of whether Rev. Lipscombe in fact had misappropriated church funds.

■ To conclude, then: While courts must decide disputes about church property, polity, and administration without resolving controversies over religious doctrine and practices, *Serbian Eastern,* 426 U.S. at 710, 96 S.Ct. 2372 "not every civil court decision ... jeopardizes values protected by the First Amendment." *Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church,* 393 U.S.

440, 449, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). As one court has explained:

> The First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships.... [T]he constitutional guarantee of *religious* freedom cannot be construed to protect *secular* ... behavior, even when [it] comprise[s] part of an otherwise religious relationship between a minister and a member of his or her congregation.

*Sanders v. Casa View Baptist Church,* 134 F.3d 331, 335–36 (5th Cir.1998) (emphasis in original). Rev. Lipscombe's "otherwise religious relationship" to Crudup did not shield him from allegations—and at this stage they are only that—of "secular behavior" tortious in nature, and to prove which no inquiry by the court into church religious practices or financial management will be necessary. For these reasons, the order of the trial court denying the motion to dismiss is

*Affirmed.*

---

**4.** This is not to suggest, by any means, that issues regarding church financial practices are *per se* beyond the authority of civil courts to adjudicate. We implicitly rejected that notion in *Bible Way Church,* delineating there the circumstances in which a court—applying "uniformly applicable, secular criteria that would not involve the court in resolving a dispute with doctrinal implications"—may decide a dispute over accounting and other financial practice of a religious body. *See* 680 A.2d at 428. In this case, however, Crudup concedes that "[Rev.] Lipscombe's actual handling of Church finances [is] unimportant to Crudup's claims" (Br. for Appellee at 11–12), and that "[t]he defamation matter rests solely on Lipscombe telling the public that Crudup was accused of sexual harassment. There are no church matters involved and the only issues concern a public statement ... that accuses Crudup of [sexual harassment]." (*Id.* at 21–22). We take Crudup at his word in agreeing that this case may, and should, be tried giving matters of internal church governance a wide berth.