**ST. JOHN'S ORPHANAGE, INC. d/b/a Knoxville Children's Foundation, Inc., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 188–87T.**

United States Claims Court.

Feb. 16, 1989.

Peter J. Towle, Knoxville, Tenn., for plaintiff. Jay Arthur Garrison, of counsel.

G. Robson Stewart, Washington, D.C., with whom was Acting Asst. Atty. Gen. James I.K. Knapp, for defendant.

OPINION

FUTEY, Judge.

St. John's Orphanage, Inc., d/b/a Knoxville Children's Foundation, Inc., a Tennessee corporation, brings this petition for declaratory judgment pursuant to 26 U.S.C. § 7428, challenging the Internal Revenue Service classification of the organization as a tax-exempt private foundation. Plaintiff contends that the organization qualifies as a tax-exempt nonprivate foundation pursuant to § 509(a)(1) of the Internal Revenue Code of 1954. For the reasons stated in this opinion plaintiff's petition is denied.

*Factual Background*

The Church Orphanage of Knoxville was chartered in Tennessee on December 1, 1905, for the purpose of operating a nonprofit orphanage. By amendment to its charter the organization later became St. John's Orphanage Incorporated (St. John's). The organization continued running as an orphanage until 1951, when it was dissolved and its assets sold. Using these funds, in addition to memorials and bequests of money and property, the organization entered into a trust agreement with Fidelity Bankers Trust Company (the predecessor of Valley Fidelity Bank and Trust Company). Pursuant to this agreement the bank managed and invested the funds of the organization. In May of 1965, St. John's established the Knox Children's Foundation to distribute the funds held in trust to child welfare projects in the area of Knox County, Tennessee.[1] In 1967 the remaining real property held by the organization was sold and the proceeds were placed into the foundation's "Improvement and Land Sale Fund" (Land Fund).

In May of 1984, plaintiff filed a Form 1023 Application for Recognition of Exemption with the Internal Revenue Service

1. Projects are selected for grants by the foundation's Board of Directors upon recommendation of the Distribution Committee.

(I.R.S.) requesting tax exempt status pursuant to § 501(c)(3) (1982) of the Internal Revenue Code of 1954 (I.R.C.) [2] and nonprivate foundation classification under I.R.C. § 509(a)(1) (1982).[3] By letter dated April 24, 1986, plaintiff was informed that the foundation was determined to be a tax-exempt organization under § 501(c)(3). However, the I.R.S. found that St. John's did not qualify as a non-private foundation under § 509(a)(1).

Plaintiff protested this preliminary adverse determination in a May 13, 1986 letter, asserting that the organization should be considered a non-private foundation pursuant to § 509(a)(1). Specifically, St. John's claimed that it met the "facts and circumstances" test set forth in 26 C.F.R. § 1.170A–9(e)(3) (1988), thus qualifying as a non-private organization under I.R.C. § 170(b)(1)(A)(vi) (1982), based on the foundation's level of public support and the nature of its activities.[4]

The I.R.S. issued a final adverse decision on January 9, 1987, which stated that only 5.6% of plaintiff's income was considered "public support," thus, St. John's failed to meet the 10% support requirement set forth in the regulations. Accordingly, the organization was found to be a private foundation. Plaintiff subsequently filed this action for declaratory judgment pursuant to I.R.C. § 7428 (1982),[5] asserting that the organization satisfies the requirements

of § 509(a)(1), and therefore should not be classified as a private foundation.

### Discussion

■ Every organization exempt from taxation under § 501(c)(3) is presumed to be a private foundation unless it comes within one of the four excepted categories of organizations enumerated in § 509(a). *See Change–All Souls Housing Corp. v. United States*, 229 Ct.Cl. 380, 382, 671 F.2d 463, 465 (1982). St. John's asserts that it satisfies the criteria of § 509(a)(1) as a publicly supported organization described in § 170(b)(1)(A). Pursuant to the Treasury Regulations, 26 C.F.R. § 1.170A–9, an organization can achieve this status by meeting either of two tests. Plaintiff claims that it meets the facts and circumstances test set forth in 26 C.F.R. § 1.170A–9(e)(3).[6] To satisfy this test, an organization must (1) normally receive a minimum of 10% of its total support from governmental agencies and/or from direct or indirect public contributions, and (2) be organized so as to attract new and additional public support. 26 C.F.R. § 1.170A–9(e)(3)(i–ii). Both parts of this test must be satisfied. *Trustees for the Home for Aged Women v. United States*, 57 AFTR2d 86–1261, 86–1263 (1986) [1986 WL 3494]. Thus, if the first part of this test can not be met, further inquiry is unnecessary.

2. § 501(c)(3) states that any "fund, or foundation, organized and operated exclusively for ... charitable ... purposes ..." shall be exempt from taxation.

3. § 509(a) provides in pertinent part that "the term 'private foundation' means a domestic or foreign organization described in 501(c)(3), other than—(1) an organization described in section 170(b)(1)(A) (other than in clauses (vii) and (viii))." This section additionally lists three other categories under which organizations can attain non-private foundation status. However, none of these exceptions is applicable in the present case.

4. Organizations described in § 170(b)(1)(A)(vi) fall within the exception set out in § 509(a)(1), thereby qualifying as non-private foundations. § 170(b)(1)(A)(vi) refers to a tax-exempt organization "which normally receives a substantial part of its support ... from direct or indirect contributions from the general public." 26 C.F.

R. § 1.170A–9 specifies the requirements necessary to qualify under this section.

5. § 7428 provides, *inter alia*, for the Claims Court to make declaratory judgments concerning the classification of organizations as private foundations. Pursuant to this section, the court must rely solely on the "administrative record" as defined in Rule 210(b)(11) of the Rules of the United States Tax Court. *See* Order in this case issued January 11, 1988.

6. The foundation concedes that it can not meet the requirements of 26 C.F.R. § 1.170A–9(e)(2), which provides that an organization normally receiving at least one-third of its total support from direct or indirect contributions from the general public, will be classified as a non-private foundation. *See* Administrative Record at 257 (letter of May 13, 1986, from St. John's to Milton Cerny, Chief Exempt Organizations Ruling Branch, I.R.S.).

An organization must satisfy the facts and circumstances test for the four taxable years preceding the taxable year in which classification is sought to qualify as a non-private foundation. 26 C.F.R. § 1.170A–9(e)(4)(ii). In the case at bar, since petitioner filed with the I.R.S. for recognition of this exemption in tax year 1984, the determination is made on the basis of tax years 1980 through 1983. If the organization fulfills the requirements of the test for the taxable year in which the exemption is sought, it will automatically be deemed to satisfy the test in the immediately succeeding taxable year. 26 C.F.R. § 1.170A–9(e)(4)(ii).

Pursuant to 26 C.F.R. § 1.170A–9(e)(6)(i), "contributions by an individual, trust, or corporation shall be taken into account as 'support' ... only to the extent that the total amount of the contributions by any such individual, trust, or corporation ... does not exceed 2 percent of the organization's total support for such period...."[7] Thus, contributions to the foundation from an entity may only be used in the calculation of support for up to, but not exceeding, 2% of the organization's total support for the year at issue. 26 C.F.R. § 1.170A–9(e)(6)(i).

██ The majority of the foundation's support comes from dividends and interest on proceeds from the 1951 sale of the orphanage. Administrative Record at 2 (I.R.S. application for recognition of exemption, received June 29, 1984). In addition, the organization receives investment income from estates and trusts created under various wills. *Id.* at 2. Plaintiff contends that these funds constitute sufficient public support for classification as a non-private foundation under § 509(a)(1). The following chart from plaintiff's brief represents the total amount of public support the foundation claims for tax years 1980 through 1983, subject to the 2% limitation.[8]

| | 1983 | 1982 | 1981 | 1980 |
|---|---|---|---|---|
| Corpus A | 2% | 2% | 2% | 2% |
| Improvement Fund & Land Sale Fund | 2% | 2% | 2% | 2% |
| Hamilton Trust | | | | |
| T.S. Jameson Trust | | | | |
| George Baxter Trust | | | | |
| E.J. Sanford Trust | 2.5% | 5.56% | 2.1% | 2.11% |
| Arthur M. Pierce | 2% | 2% | 2% | 2% |
| Trust Under the Will of Florence Hayward | 2% | 2% | 2% | 2% |
| Trust Under the Will of Amele Seliaz | 2% | 2% | 2% | 2% |
| Total | 12.5% | 15.56% | 12.1% | 12.11% |

Defendant argues that this chart is incorrect, thus, contrary to plaintiff's assertions, St. John's does not meet the 10% support requirement of the facts and circumstances test.

The income that the foundation claims for tax years 1980 through 1983 is derived from the investment of the above funds and trusts. The government argues that the investment income from Corpus A and the Land Fund should not be considered as public support. Plaintiff identifies Corpus A as restricted grants and contributions received by the orphanage prior to its disbandment, and the Land Fund as constituting various restrictive gifts received by the orphanage during its operation, subject to restrictions on distribution.[9]

Under the regulations public support is defined as "direct or indirect contributions from the general public...." 26 C.F.R. § 1.170A–9(e)(6)(i). " '[I]ndirect contributions from the general public' includes contributions received by the organization from organizations (such as section 170(b)(1)(A)(vi) [publicly supported] organizations) which normally receive a substantial part of their support from direct contributions from the general public...." 26 C.F.R. § 1.170A–9(e)(6)(i). Thus, direct contributions are those which are given directly to the organization by the general public. Indirect contributions are those which an organization receives from other

---

7. 26 C.F.R. § 1.170A–9(e)(6) sets forth several limited exceptions to this rule, however, none is pertinent to the case at bar.

8. As discussed *infra* at 303, plaintiff's chart incorrectly shows support from four separate trusts (*i.e.,* the Sanford, Pierce, Hayward and Seliaz trusts). Additionally, the figures in the column marked "E.J. Sanford Trust" apparently represent the aggregate support of that trust and the three preceding trusts listed in the table.

9. Plaintiff's brief at 7.

publicly supported organizations. *See Trustees*, 57 AFTR2d at 86–1263.

The examples in the Treasury Regulations aid in the determination of whether the investment income from Corpus A and the Land Fund constitutes public support. In examples one and two of 26 C.F.R. § 1.170A–9(e)(9), both support from investment income of an organization's original endowment, and other investment income are not considered public support. Only contributions which come *directly* from the general public or from other publicly supported organizations qualify as public support within the meaning of the regulations. *See* examples, 26 C.F.R. § 1.170A–9(e)(9).

Underlying this determination is the Congressional intent behind the creation of public charities and private foundations. These two classes of charitable organizations, established under the Tax Reform Act of 1969, Pub.L. No. 91–172, 83 stat. 487 (codified in scattered sections of 26 U.S.C.), are primarily distinguished by the degree of public involvement in the organization. Public charities receive a greater portion of support from public sources (*i.e.*, sources unconnected to the organization), whereas private foundations receive the bulk of their support from investment income rather than contributions. *See* § 509. To assure that private foundations employ their funds for charitable purposes and not misuse them, certain restrictions and requirements are imposed on private foundations to compensate for their lack of public accountability. *See* §§ 4940–4945; *Change–All Souls*, 229 Ct.Cl. at 381, 671 F.2d at 465. Public charities, in contrast, which rely on the public or government for a substantial portion of their support, need to be accountable and responsive to the public or government in order to maintain their support base. *See Wm. F. Quarrie, Mable E. Quarrie, etc. v. C.I.R.*, 70 T.C. 182, 190 (1978), *aff'd*, 603 F.2d 1274, 1277 (7th Cir. 1979). Thus, Congress imposed no restrictions on public charities since the organizations' donors are presumed to provide the necessary oversight. 603 F.2d at 1277.

Defendant states that the funds which the foundation receives from the investment of Corpus A and the Land Fund are not public support since they do not provide the requisite public involvement in the organization as contemplated by the legislation. This conclusion is premised on the fact that the original donors have no input concerning the use or expenditure of the income from these funds. Therefore, there is no independent judgment as to whether the organization is properly fulfilling its charitable purpose.

This court agrees. An organization's investment income is not public support for purposes of the facts and circumstances test as evidenced by the examples in the Treasury Regulations and the legislative intent.

Plaintiff additionally asserts that because these funds are subject to "restrictions" they should qualify as public support. However, the record contains no evidence regarding either the nature of the restrictions or to which funds they apply. Furthermore, investment income derived from restricted funds does not qualify as public support under 26 C.F.R. § 1.170A–9.

In *Trustees*, 57 AFTR2d 86–1261, the plaintiff taxpayer argued that investment income generated by the organization's endowment fund should be considered public support since the funds were restricted (*i.e.*, the taxpayer could access the investment income but not the principal). The court in that case, however, determined that the taxpayer's investment income did not constitute indirect public support under 26 C.F.R. § 1.170A–9(e)(6)(i), even if the original funds were themselves restricted. *Trustees*, 57 AFTR2d at 86–1263. This court similarly finds that the income derived from Corpus A and the Land Fund does not qualify as public support even if restrictions have been placed upon these funds, since no restrictions can provide the necessary oversight and judgment. Thus, plaintiff's argument must fail.

In addition to the income that the foundation receives from the investment of Corpus A and the Land Fund, the organization also receives support from the investment

of numerous trusts.[10] As identified in plaintiff's April 2, 1985 letter to the I.R.S., these trusts are contained in three accounts as follows:

| Account Number | |
| --- | --- |
| 70800–172 | Trust under the Will of T.A. Jameson |
| 81900–334 | Trust under the Will of Emile Seilaz |
| 11900–099 | Hugh W. Trevis Trust (Mrs. George W. Baxter Trust) E.J. Sanford Trust Amelia L. Hamilton Trust A.M. Pierce Trust Trust under the Will of Florence C. Hayward |

Plaintiff suggests that each trust in account number 11900–099 should be considered as a separate source of support. However, since St. John's carries the burden of proof, all insufficient or contradictory evidence must be resolved against plaintiff. *See Church of Visible Intelligence that Governs the Universe v. United States,* 4 Cl.Ct. 55, 60 (1983) (citing *Inc. Trustees of Gospel Worker Soc'y. v. United States,* 510 F.Supp. 374, 377 n. 6 (D.D.C. 1981), *aff'd,* 672 F.2d 894 (D.C.Cir.1981)). The record contains no breakdown of these commingled funds, thus, the court must treat this account as one source of income.[11]

Defendant appears to argue that the support which St. John's derives from the investment of these trusts does not qualify as public support. This court need not reach that question. Since these accounts are subject to the 2% support limitation, 26 C.F.R. § 1.170A–9(e)(6), the largest amount of support the foundation could claim in any one year from the income produced by the three accounts is 6%. This does not satisfy the 10% requirement set forth in the first part of the facts and circumstances test. Therefore, it is unnecessary to determine whether St. John's meets the second part of the facts and circumstances test.

### Conclusion

Upon review of the Administrative Record, this court finds that plaintiff has failed to meet its burden of proof in order to show that St. John's is a non-private foundation pursuant to § 509(a)(1).

Accordingly, plaintiff's petition is denied. The Clerk is directed to enter judgment dismissing this action. No costs.

IT IS SO ORDERED.

---

10. Plaintiff additionally asserts that the foundation receives governmental support as evidenced by an agreement between the Tennessee Department of Human Services and the Knox Children's Foundation. Plaintiff's brief at 10. That agreement, however, relates to the period of time from January 1, 1976 to June 30, 1976, which is not within the four years at issue. Administrative Record at 497. The record does not reflect any governmental support during the years 1980 through 1983.

St. John's also derives income from what it labels Corpus B and Corpus C. However, the foundation concedes that this amount is "insignificant" and therefore "should not be considered for purposes of the computation of public support." Plaintiff's brief at 8.

11. Even if these trusts were considered separately, St. John's would still fail to satisfy the 10% support requirement.