Michael V. KELSEY, Sr., et al., Appellants,

v.

John RAY, et al., Appellees.

No. 97–CV–1133.

District of Columbia Court of Appeals.

Argued Oct. 6, 1998.
Decided Nov. 12, 1998.

---

Frederick A. Douglas, with whom Curtis A. Boykin and Laura E. Jordan, Washington, DC, were on the brief, for appellants.

Ronald C. Jessamy, with whom Joanne Doddy Fort, Washington, DC, was on the brief, for appellees.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

FARRELL, Associate Judge:

This appeal once again presents the issue of the competence of the courts to inquire into matters of ecclesiastical governance. Plaintiffs-appellees, members of the New Sa-maritan Baptist Church ("the Church"), brought suit for injunctive and declaratory relief against the pastor and current and former deacons and trustees of the Church, collectively the "Official Board." The complaint alleged breach of fiduciary duty in the defendants' management of Church property, principally in the manner by which they had loaned Church money to the new pastor interest-free for the purchase of a residence, and had secured approval of the loan by the Church membership without disclosing information which, they alleged, the members needed to cast an informed vote. The defendants moved to dismiss under Super. Ct. Civ. R. 12(b)(1) and (6) (1998) on grounds that judicial intervention in the Church's management would violate the First Amendment. The trial judge denied the motion in all but one respect,[1] stating that he was "confident" he could adjudicate the dispute by applying statutory law and the Church's Constitution and By-Laws "without becoming involved with any ecclesiastical matters or doctrines."

In *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards*, 680 A.2d 419 (D.C.1996), this court dealt with a similar claim of financial mismanagement by the pastor and trustees of a church, including their failure to account for church funds and issue financial reports to its members. Reversing the denial of a motion to dismiss, we held that the plaintiffs had failed to allege the application of neutral legal standards, either statutory or embodied in the church's governing instruments, that were "clear [and] objective" enough to permit a court to examine the church's financial practices without "involv[ing it]" in resolving a dispute with doctrinal implications." *Id.* at 428, 430. In this case, we conclude that the plaintiffs' claims ultimately cannot be distinguished from those in *Bible Way Church* and that our analysis and holding there dictate the outcome here. We therefore reverse the denial of the motion to dismiss.[2]

---

1. The court granted the motion as to count I, which demanded injunctive relief in the form of an order requiring disclosure of financial information before completion of the December 16, 1996 Annual Meeting of the Church, since that meeting had already taken place. No cross-appeal has been taken from that ruling.

2. As *Bible Way Church*, 680 A.2d at 425–26, and *United Methodist Church v. White*, 571 A.2d 790, 791–92 (D.C.1990), also dictate, the trial court's interlocutory order is appealable.

A motions division of this court ordered further briefing on whether the appeal was timely

## I. Background

The Church operates in the District of Columbia under a Constitution and By–Laws adopted on May 19, 1948. The Church was incorporated on November 6, 1956, under then D.C.Code § 29–501 *et seq.* (1951) (the "Religious Societies statute"). In 1993, the Church selected Pastor Michael V. Kelsey, Sr., to replace its previous pastor. In September 1994, the Official Board of the Church, consisting of the pastor, deacons, and trustees, agreed to lend Pastor Kelsey money toward his purchase of a $325,000 home at an interest rate of six percent. The pastor did not take part in the vote. At a "special called" meeting of the Church membership that month, the Board recommended approval of the loan. One Church member apparently suggested that the loan be interest-free, commenting that "the Church should not profit from this loan to the Pastor." The membership approved a no-interest loan at the meeting and eventually loaned the pastor some $256,000 for the purchase, which took place in October 1994. In February 1996, the pastor signed an agreement to repay the loan, and the purchase money mortgage held by the Church was recorded.

In December 1996, the plaintiffs wrote a letter to the pastor requesting disclosure of certain financial information to the membership within fourteen days. Specifically, they requested:

all the facts and documents surrounding the Church's role in helping the Pastor purchase a home; that the names of the members of the Auditing Committee (required by the Church By-laws) and any Audit Reports for the years 1994, 1995 and 1996 be made available; that all claims and lawsuits, settled or pending, against the Church or the Pastor ... be made available; and that any information relating to the Church's affiliation with a religious body that requires as a condition of membership that the Church and its members comply with its governing documents and the financial obligations of the Church to such religious body be made available to all Church members to review and inspect ... for a period of thirty (30) days.

The plaintiffs asked particularly for records of the "special called" meeting at which the loan to the pastor had been approved, and the Church's records of past filings with the Internal Revenue Service. They apparently had learned of an audit and management report prepared by an outside CPA and submitted to the Trustee Board in 1993, which warned that loans made by the Church to "members and sons of the church" would endanger its tax-exempt status.

Not satisfied with the leadership's response, the plaintiffs brought this suit. In their amended complaint, they alleged that the various Boards of the Church had become, "for all practicable purposes, ... mere alter egos of the Pastor," acting "in the sole interest of the Pastor and not the Church." In particular, while conceding that at the 1994 "special called" meeting a majority of the Church members present had approved the interest-free loan to the pastor, they alleged that the defendants had failed to inform the membership of the 1993 audit report admonishing against such loans. The complaint charged generally that throughout the relevant period, the defendants "were the only persons privy to pertinent information which the Church's membership would need to make informed decisions about recommendations that were presented to the [Official] Board and the Church. They routinely failed to provide the necessary information to the Church's membership." Illustrative was the 1996 Annual Church Meeting at which, according to the complaint, "[t]he Deacons' report was presented but copies were not shared with the congregation for members to review," after which "[t]he Trustee Report was ... presented [and] again copies were not shared with the congregation." This resulted in the members being asked to approve a $50,000 expenditure for a new car for the pastor "without knowing how much money the Church actually had on hand or what its financial budget was for 1997." The plaintiffs alleged that their requests for information in the December 1996 letter to the Pastor had been unmet, as had their request for a copy of the minutes of the 1994 "special

noted. We hold that it was timely, and regard

further discussion of the issue unnecessary.

called" meeting and documentation of past IRS filings.

The complaint sought a declaratory judgment, *inter alia*, that the defendants had breached their fiduciary duties; that the members "have a right to receive, review and inspect information and documents ... that will inform the members regarding the Church's finances, compliance or non-compliance with Federal and local laws[,] and other liabilities"; and directing the defendants "to have an audit conducted of the Church's finances by an outside Certified Public Accountant Firm."

## II. Discussion

■ "The issue of subject matter jurisdiction is a question of law, and thus we review the denial of the Rule 12(b)(1) motion *de novo*." *Bible Way Church*, 680 A.2d at 427. In this appeal, the plaintiffs defend the trial court's conclusion that it could adjudicate their suit without involvement in ecclesiastical matters by arguing that they seek only an outside audit and disclosure of information to the members which the Church is obliged to provide by its own Constitution and By-Laws and the statute under which it is incorporated. Specifically, they assert that

> as members of the Church they are entitled to receive and review annual audit reports and to know the names of the Audit Committee.... Moreover, as members of a church incorporated under D.C.Code § 29–501 *et seq.* ... they are entitled to receive and review financial information about the Church and such other information [as] would allow them to make informed decisions about the business affairs of the Church.

Br. for Appellees at 8. The plaintiffs concede that our decision in *Bible Way Church, supra,* is a sizable barrier that must be overcome if they are to prevail.

The allegations in *Bible Way Church* bear a close resemblance to the present ones. As here, the complaint there alleged that the church leadership had allowed itself "to 'fall under the complete domination' of the pastor," as exemplified by its failure to monitor funds received; to account for funds turned over to the wife of the founding pastor, as

well as other funds; to comply with federal and local tax laws; "to provide annual financial reports to the members"; and to maintain accurate financial records. By these failures to account for and report on church finances, the church allegedly "had violated a duty of care owed to its members" that was reflected in published, well-established standards for audits and accounts and " '[r]esponsible [s]tewardship.' " *Bible Way Church*, 680 A.2d at 424.

This court rejected the lawsuit on the ground that entertaining it "would involve the court in an ecclesiastical dispute—an involvement forbidden by the Free Exercise Clause" of the United States Constitution. *Id.* at 426. Contrary to the plaintiffs' contention that the Bible Way Church's liability could be established by "neutral principles of law" (*see Jones v. Wolf*, 443 U.S. 595, 604, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979)) in the form of " 'objective, well-established concepts of [accounting and record-keeping],' " *Bible Way Church*, 680 A.2d at 426 (citation and footnote omitted), we were persuaded that

> a church's financial regime, including any required reports to members, necessarily reflects an array of decisions about a member's obligation to pledge funds, and about the leaders' corresponding responsibility to account for those funds, that a civil court cannot arbitrate without entangling itself in doctrinal interpretations.

*Id.* at 429. We explained further, quoting with approval from the church's brief, that

> [a]ccounting is an area riddled with major subjective decisions. When the entity in question is a religious society, those subjective decisions raise questions of *internal church governance* which are often themselves based on the application of church doctrine.

*Id.* The plaintiffs had not demonstrated that the accounting and reporting principles they relied on were "so universally—and indisputably—applicable to every organized church that they can, indeed must, be taken for granted without need for church action to adopt them." *Id.* at 428. Nor had they shown that Bible Way Church had adopted those principles so as to "itself ... obviate[ ]

all First Amendment concerns." *Id.* Without either of these showings, a court could not be certain of applying neutral principles, *i.e.,* "a previously prescribed, authoritative, nondiscretionary—and clear—policy" to resolution of the management dispute "without ecclesiastical judgment or intrusion." *Id.* We therefore ordered dismissal of the suit in favor of "the primacy of church tribunals for deciding such matters, consistent with the First Amendment." *Id.* at 431 (citing, *inter alia, Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 713, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976)).

■ The plaintiffs here seek to avoid *Bible Way Church*'s holding by contending that the New Samaritan Baptist Church has expressly adopted an annual audit requirement and an obligation to report to the membership annually on its finances. They point first to Article VI of the Church's Constitution, which states in part that the Official Board "shall be authorized to transact all business of the Church and report annually, or at request of the Church, of its work," and to Section 1 of the By–Laws' General Church Regulations stating that "[a]ll new business pertaining to the Church must be brought to, and considered by, the Official Board before any action is taken by the Church." These provisions, they argue, obligate the Official Board to furnish the members "with complete and accurate information," Br. for Appellees at 3, on matters on which "action is [to be] taken by the Church."

These provisions do not surmount the *Bible Way Church* barrier. While Article VI "authorize[s]" (though it does not literally compel) the Board to "report annually" to the church membership, it is silent about the content of such reports or how much information they must contain.[3] It says nothing at all about the kind or particularity of information "necessary" (in the complaint's words) for the members to be able "to understand and determine the financial conditions of the Church." Consequently, for a court to decide—as the complaint demands—what

disclosures are needed "to help [the members] in making ... informed decision[s]" would thrust it into that realm of subjective and even doctrinal decisionmaking that *Bible Way Church* declares out of bounds. Underscoring the point is the directive at the end of the By–Laws which states that "[w]here these regulations do not cover, we shall look to the New Testament and the Hiscox Directory for guidance."[4] *Cf. Williams v. Mount Jezreel Baptist Church,* 589 A.2d 901, 909 (D.C.1991) (court could not look to definitions of church membership in Hiscox Directory without forbidden involvement in doctrinal interpretation).

The plaintiffs also gain no help from Article IX, Sec. 4 of the Church Constitution, which states that "[t]he Trustees ... shall see that all moneys [sic] are paid according to the wishes of the Church." Even if the members received inadequate information before approving the loan to the pastor, nothing in Section 4 states that the wishes of the Church have to be based on full or even accurate information—matters very much in the eye of the beholder. The plaintiffs do not claim the leadership failed to determine the wishes of the congregation on the interest-free loan, only that it withheld information needed by the members to make an "intelligent and informed decision." The language cited provides no "clear, objective accounting and reporting standards," *Bible Way Church,* 680 A.2d at 428, enabling a court to evaluate that claim.

Finally, the plaintiffs refer to the first sentence of Article IX, Sec. 4, declaring the trustees to be "custodians of all Church property," and argue that in *Mount Jezreel Christians Without a Home v. Board of Trustees of Mount Jezreel Church,* 582 A.2d 237 (D.C.1990), we permitted a suit by members of the church to go forward alleging breach of fiduciary duty by the trustees in managing the church's assets and business affairs. However, in doing so we were careful to state that the plaintiffs had "standing to sue the trustees in the event that the trust

---

3. The complaint acknowledged that at Annual Meetings (in December 1996, for example) a Trustee's Report is presented which apparently describes the "work" (Art. VI) of the trustees.

4. The "Hiscox Directory" is a general guide to conducting church organization and management in Baptist churches.

property is used or disposed of in a manner contrary to *the stated purposes* of the [church] trust." *Id.* at 239 (emphasis added). That decision is thus in keeping with *Bible Way Church*'s insistence that, failing principles "universally ... applicable to every organized church," *Bible Way Church,* 680 A.2d at 428, the church itself must have "adopted clear, objective accounting and reporting standards," *id.,* before a court may entertain a dispute over its financial management. The plaintiffs here have not met that test.[5]

In support of their related demand for an audit of the Church finances by an outside accounting firm the plaintiffs cite Section 4 of the By–Laws' General Church Regulations, which states that "[t]he Auditing Committee, named by the Church, shall audit the books of the Church once a year." That language self-evidently provides no basis for compelling an audit by an outside accountant; nor, indeed, does it say anything about the form that an in-house audit would have to take; and it confers no right on the members to learn the names of past Auditing Committee members.

█ The plaintiffs' remaining contention is that the defendants may be held accountable by a court under the neutral principles of the District of Columbia Nonprofit Corporation Act (DCNCA), D.C.Code § 29–501 *et seq.* (1996). That claim fails because the plaintiffs pled no facts demonstrating that the Church either was "organized" under the DCNCA[6] or has since "elect[ed] to accept the provisions of" that act. D.C.Code § 29–503(a). *See Bible Way Church,* 680 A.2d at 430 ("[W]hen the First Amendment casts a shadow over the court's subject matter jurisdiction, the plaintiff is obliged to plead unqualified jurisdictional facts that clearly take the case outside the constitutional bar."). We thus have no occasion to consider what we recently termed "the difficult substantive question whether a church which has elected *to incorporate under the* DCNCA *may* suc-

cessfully assert a First Amendment defense against a well-pleaded complaint alleging" conduct in violation of that statute. *West v. Morris,* 711 A.2d 1269, 1273 n. 6 (D.C.1998).

Accordingly, the order of the Superior Court denying the motion to dismiss is reversed, and the case is remanded with directions to dismiss the complaint.

*So ordered.*

---

5. We observe as well that the plaintiffs make no claim that the asserted failure to account to the membership amounted to fraud or collusion. *See Bible Way Church,* 680 A.2d at 427 (noting cases raising possibility of a fraud or collusion exception to church immunity from civil suit).

6. In fact it was incorporated in 1956 under the Religious Societies statute, six years before the DCNCA was enacted.