Michael V. KELSEY, Sr., et al., Appellants,

v.

John RAY, et al., Appellees.

No. 97–CV–1133.

District of Columbia Court of Appeals.

Filed Feb. 11, 1999.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

FARRELL, Associate Judge:

In our earlier opinion in this case, we rejected the plaintiffs' contention that the defendants (the pastor and current and former deacons and trustees of the New Samaritan Baptist Church ("the Church")) could be held accountable by the court under the "neutral principles" of the District of Columbia Nonprofit Corporation Act ("DCNCA"), D.C.Code § 29–501 et seq. (1996). See Kelsey v. Ray, 719 A.2d 1248 (D.C.1998). We did so because section 29–503(a) states that the DCNCA applies only to "corporations organized" under the act "or which elect to accept [its] provisions," and the plaintiffs had

pled no facts demonstrating that the Church fit either category. Id. at 1253. Rather, it was undisputed that the Church had been, and remains, incorporated under the Religious Societies statute, D.C.Code § 29–901, et seq. In their petition for rehearing, the plaintiffs now make two arguments, neither more than hinted at in their brief on appeal (nor mentioned at oral argument), for why the DCNCA nevertheless binds the operations of the Church.

1.

First, they point to D.C.Code § 29–503(c), which states:

No corporation eligible to be formed under this chapter [the DCNCA] shall be incorporated under any other act or statute now in force in the District of Columbia except that those organizations eligible to be formed under those acts or parts of acts referred to in § 49–303, may be formed under those acts or part of acts.

D.C.Code § 49–303 (1997), in turn, states:

All acts and parts of acts relating to the organization and powers of vestries, trustees, or other governing bodies of any religious denomination shall remain in force except insofar as the same are inconsistent with or replaced by the provisions of this Code.

The combined effect of these two statutes, the plaintiffs argue, is to make the defendants accountable under provisions of the DCNCA—specifically section 29–528, prohibiting loans by a corporation to its directors or officers—that are "inconsistent with" provisions of the earlier Religious Societies statute.

This argument is unpersuasive. Read together, sections 29–503(a) and (c) pertain to corporations either "organized" under the DCNCA or that are "eligible to be formed under" it and "elect to" do so (i.e., "to accept [its] provisions"). They do not apply to corporations such as the Church organized under pre-existing parts of Title 29. That is confirmed by the Senate Report accompanying passage of the DCNCA, which explains that, while "it seems likely that many corporations will desire to accept the act in order to assure themselves of its advantages, ...

the existing chapters of title 29 would remain in the code and would still govern the corporations heretofore formed pursuant to such provisions." S. Rep. No. 87–1357, at 3 (1962); *see also* H.R. Rep. No. 87–1032, at 3 (1961).

Moreover, even as to newly formed nonprofit corporations, section 29–503(c) exempts from application of the DCNCA "those organizations eligible to be formed under the acts or parts of acts referred to in § 49–303," *i.e.,* "vestries, trustees, or other governing bodies of any religious denomination," which may continue to "be formed under those acts." The plaintiffs, relying on the "except" clause of § 49–303 itself, argue that such acts providing for the incorporation of religious organizations must be "[ ]consistent with" the DCNCA to "remain in force." But this interpretation makes the exemption in section 29–503(c) a nullity: under the plaintiffs' reading, a religious body *is* bound to follow the DCNCA whenever its organizing statute differs from the DCNCA. An alternative reading—which we adopt—harmonizes both sections, 29–503(c) and 49–303.

D.C.Code § 49–303 was enacted in 1902[1] as part of the first general codification of laws in the District of Columbia. *See generally Gallimore v. Washington,* 666 A.2d 1200, 1204–05 (D.C.1995). By its terms, the section was intended to repeal, wholly or in part, those acts pertaining to religious bodies that predate this assimilation of the existing "patchwork" of laws governing the District into a single Code. *Id.* Section 49–303 was not meant, in other words, to be an ongoing repealer of actual *Code* provisions that became inconsistent with later-enacted ones. Thus, it has no effect upon the Religious Societies statute, which, as it happens, was enacted as part of the 1901 general codification. *See generally Prince v. Firman,* 584 A.2d 8, 11 n. 5 (D.C.1990). The DCNCA, by operation of section 29–503(c), is an alternative organizing statute for religious bodies, not a substitute.

2.

■ *Second,* the plaintiffs have a facially more plausible recourse to neutral principles when they point to D.C.Code § 29–531(a)(1), which provides in relevant part:

> Notwithstanding any provision to the contrary in the governing instrument or under any law applicable to the District of Columbia . . ., the governing instrument of any corporation organized under the laws of the District of Columbia . . ., which is treated during a particular year as a private foundation described in § 509 of the Internal Revenue Code of 1954 shall be deemed during such particular year to contain the following provisions:
>
> (A) The Corporation shall not engage in any act of self-dealing which is taxable under § 4941 of the Code . . . .

The plaintiffs argue that this statute affords the necessary objective standard by which a court can determine whether the loan to Pastor Kelsey breached a duty to the church members. But reference to the Internal Revenue Code reveals ultimately that section 29–531 has no application to the Church.

26 U.S.C. § 508(e) (1994), added by the Tax Reform Act of 1969,[2] requires that "private foundations" as defined in section 509 of the Internal Revenue Code incorporate "certain limitations on their activities" into their governing documents, such as provisions forbidding acts of self-dealing taxable under 26 U.S.C. § 4941 and forbidding taxable expenditures that would subject the organization to tax under 26 U.S.C. § 4945. *See* H.R. Rep. No. 92–610, at 2 (1971). In response to the enactment of section 508, the present D.C.Code § 29–531 was enacted in 1971. *See* Act of Dec. 6, 1971, Pub.L. No. 92–177, 85 Stat. 496. The purpose of the enactment was "to facilitate the amendment of the governing instruments of certain charitable . . . trusts . . . which are treated as 'private foundations' for Federal tax purposes, in order to conform to the requirements of Sec. 508 of the Federal Internal Revenue Code." H.R. Rep. No.

---

**1.** Section 49–303 was enacted as a part of "An Act To amend an Act entitled 'An Act to establish a code of law for the District of Columbia'" which had been approved March 3, 1901. *See* ch. 1329, 32 Stat. 520 (1902).

**2.** Pub.L. No. 91–172, 83 Stat. 487.

92–610, *supra,* at 1.[3] Thus, section 29–531 does for certain charitable organizations what the organizations would have had to do on their own: it incorporates the tax rules into the governing documents of the organization to protect its tax exempt status. If section 29–531 applies to churches, the tax rules would constitute part of the constitution and by-laws of the New Samaritan Baptist Church. Under our decisions in *Kelsey* and *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards,* 680 A.2d 419 (D.C.1996), then, the members of the Church would arguably be able to enforce those rules against the trustees in a breach of fiduciary duty action.

D.C.Code § 29–531, however, does not apply to churches. Title 26 U.S.C. § 509(a) defines a private foundation as "a domestic or foreign organization described in section 501(c)(3) other than—(1) an organization described in section 170(b)(1)(A) ...." 26 U.S.C. § 170(b)(1)(A) includes among those organizations "(i) a church or a convention or association of churches." *See also* 26 C.F.R. § 1.170A–9 (1998) (defining § 170(b)(1)(A) organizations). Because 26 U.S.C. § 509 excludes a convention or association of churches from the definition of private foundations,[4] churches are exempted from the strictures of 26 U.S.C. § 508 and consequently D.C.Code § 29–531.

The reason for the church exemption was explained in *Quarrie v. Commissioner,* 603 F.2d 1274 (7th Cir.1979):

Private foundations were defined and subjected to significant regulations and controls by the Tax Reform Act of 1969. These reforms were prompted by Congressional concern over widespread abuses of the tax-exempt status of private foundations....

Public charities were excepted from private foundation status on the theory that their exposure to public scrutiny and their dependence on public support would keep them from the abuses to which private foundations were subject.

*Id.* at 1277. When a public organization "misbehaves, misuses its capital, or engages in questionable practices, the public will presumably learn about it, and by the simple expedient of cutting off contributions, correct that which has become offensive." *Id.* at 1277 n. 3.[5] *See also Bible Way,* 680 A.2d at 431 ("Absent an effective church tribunal or adoption of standards a civil court can apply without crossing an ecclesiastical line, a church member's ... remedy for perceived financial irregularity appears to be cutting one's losses by leaving the membership.").

In sum, neither the DCNCA in general nor section 29–531 specifically governs the financial operations of the Church. The petition for rehearing is, therefore,

*Denied.*

---

**3.** Under the Tax Reform Act, "[t]he tax exemption enjoyed by such corporations or trusts will be denied them unless their governing instruments specifically require such compliance" with the Tax Reform Act. H.R. Rep. No. 92–610, *supra,* at 5.

**4.** "The phrase 'convention or association of churches' was intended to refer to non-hierarchical churches such as the Baptists which are associations of virtually autonomous local congregations." Reka Potgieter Hoff, *The Financial Accountability of Churches for Federal Income Tax Purposes: Establishment or Free Exercise?,* 11 Va. Tax Rev. 71, 83 (1991).

**5.** To like effect, see *St. John's Orphanage, Inc. v. United States,* 16 Cl.Ct. 299, 302 (Cl.Ct.1989) (case citations omitted):

Public charities receive a greater portion of support from public sources (*i.e.,* sources unconnected to the organization), whereas private foundations receive the bulk of their support from investment income rather than contributions. *See* § 509. To assure that private foundations employ their funds for charitable purposes and not misuse them, certain restrictions and requirements are imposed on private foundations to compensate for their lack of public accountability. *See* §§ 4940–4945. Public charities, in contrast, which rely on the public or government for a substantial portion of their support, need to be accountable and responsive to the public or government in order to maintain their support base. Thus, Congress imposed no restrictions on public charities since the organizations' donors are presumed to provide the necessary oversight.